**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X   03 CV 3927 (NG) (VVP)
**MAURICE OPARAJI,**

                **Plaintiff,**

   -against-                                 **OPINION AND ORDER**

**UNITED FEDERATION OF TEACHERS and**
**STUART COHEN,**

                **Defendants.**
----------------------------------------------------------------------X

**GERSHON, United States District Judge:**

In this action alleging employment discrimination and various state law torts, defendants move for summary judgment. For the reasons set forth below, defendants' motion is granted with respect to plaintiff's federal claims of employment discrimination. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and they are dismissed without prejudice.

**FACTS**

This action is one of four related cases filed by plaintiff alleging that he suffered unlawful discrimination during a probationary period of employment in the New York City school system. The history of these cases is set forth at some length in the court's decision in *Oparaji v. New York City Dept. of Education*, ____ F. Supp. 2d _____, 2005 WL 1398072 (E.D.N.Y. June 14, 2005) ("Oparaji III"). Here, the court discusses only the facts that are relevant to the instant motion.

Unless otherwise noted, the following facts are not in dispute:

1

Plaintiff, a New York State certified teacher, is a native of Nigeria and a naturalized citizen of the United States. Defendant United Federation of Teachers (the "UFT" or the "Union"), a labor union, is certified by the New York State Public Employment Relations Board ("PERB") pursuant to the provisions of the Taylor Law, N.Y. Civ. Serv. Law Art. 14, as the exclusive bargaining representative of certain employees of the New York City Department of Education (the "Dept. of Education"), formerly known as the Board of Education, including teachers. At all times relevant to this case, plaintiff was employed by the Dept. of Education as a probationary (i.e., non-tenured) teacher at Springfield Gardens High School ("Springfield Gardens"). As such, he was represented by the UFT for the purposes of collective bargaining and subject to the terms of the collective bargaining agreement (the "Collective Bargaining Agreement") between the UFT and the Dept. of Education that became effective on October 16, 1995. His union representative at Springfield Gardens was defendant Stuart Cohen.

**Disciplinary and Grievance Procedures under the Collective Bargaining Agreement**

Article Twenty One of the Collective Bargaining Agreement, entitled "Due Process and Review Procedures," provides, *inter alia*, that no derogatory material may be placed in a teacher's official personnel file unless the teacher has had an opportunity to review it and that material must be removed from the file when a teacher's claim that it is inaccurate or unfair is sustained. It further provides that a teacher summoned by the principal to a conference that may lead to disciplinary action is entitled to be accompanied, at the teacher's option, by the teacher's union representative and that probationary teachers rated as unsatisfactory and/or recommended for discontinuance are entitled to appeal pursuant to procedures set forth in the Dept. of Education's bylaws.

Article Twenty Two of the Collective Bargaining Agreement, entitled "Grievance Procedure," defines the term "grievance," in relevant part, as follows:

> A "grievance" shall mean a complaint by an employee in the bargaining unit (1) that there has been as to him a violation, misinterpretation or inequitable application of any of the provisions of this Agreement or (2) that he has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting employees.

Collective Bargaining Agreement at 135. It then sets forth a procedure for the presentation and adjustment of grievances that is divided into three steps. "Step 1" entails review by the principal; "Step 2" entails review by the local school board or assistant superintendent; "Step 3" entails review by the chancellor. To initiate Step 1, the grievant must notify the principal of his or her school either orally or in writing of the grievance. The appendix to the Collective Bargaining Agreement contains a "Step 1 Grievance Form" that employees may use for presenting grievances, but "failure to use the form will not result in forfeiture of the grievance." *Id*. at 136. After receiving a grievance, the principal must hold a conference with the grievant and issue a decision within five days. "At the conference, the employee may appear personally or he may be represented by a Union representative or by any teacher of his choice in the school; but where the employee is represented he must be present." *Id*. If the grievance is made in writing, then the principal's decision must be made in writing. If the grievant is not satisfied with the outcome of Step 1, then he or she may proceed to Step 2 within three school days after he or she has received the decision of the principal.

Article Twenty Two further provides that "[c]onferences held under this procedure shall be conducted at a time and place which will afford a fair and reasonable opportunity for all persons entitled to be present to attend," that "[f]ailure at any step of this procedure to communicate the decision on a grievance within the specified time limits shall permit the aggrieved employee to

3

proceed to the next step," that "[f]ailure at any step of this procedure to appeal a grievance to the next step within the specified time limits shall be deemed to be acceptance of the decision rendered at the step, and that "[t]he time limits specified in any step of this procedure may be extended, in any specific instance, by mutual agreement." *Id*. at 142.

**Grievances Dated October 19, 2000**

On October 17, 2000, plaintiff asked Mr. Cohen to assist him in filing two grievances. The first concerned a letter that was placed in plaintiff's personnel file by the principal of Springfield Gardens, documenting steps taken by the school to investigate allegations by one of plaintiff's students that she was pushed by plaintiff. The second grievance concerned the number of work stations in plaintiff's classroom, which plaintiff considered to be inadequate. Mr. Cohen filled out two Step 1 Grievance Forms, which plaintiff signed on October 19, 2000. The next day, Mr. Cohen delivered them to the principal's office.[1] The principal scheduled a hearing on both grievances for October 23, 2000. Plaintiff, however, went out on sick leave on October 20, 2000 and remained out until January 2, 2001. He did not appear for the hearing on October 23, 2000.

---

[1]Although plaintiff now disputes that these grievance forms were ever filed, he argued during the PERB proceedings, discussed *infra*, that Mr. Cohen filed the October 19, 2000 grievances but then refused to proceed with them. *See* ALJ Decision at 12 ("As stated at the outset of the hearing, the charge consists of two separate sets of allegations. The first set alleges, as clarified and developed on the record, that the UFT violated the Act by filing grievances but refusing to proceed with the grievance process on Oparaji's behalf with regard to the following: a letter in a file concerning pushing a student's hand 'hard' dated October 17, 2000, his contention that there were more students than work desks dated October 17, 2000 . . . .") (footnotes omitted). Accordingly, plaintiff is judicially estopped from asserting here that the forms were never filed. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir. 2000).

**Materials Sent to Plaintiff While on Sick Leave**

On December 5, 2000, while plaintiff was on sick leave, the principal sent plaintiff a packet of materials that included the following documents: a letter from the principal dated October 16, 2000, a copy of which was placed in plaintiff's personnel file, concerning allegations that plaintiff had threatened to place a curse on certain students; an observation report dated October 11, 2000 in which plaintiff's lesson was rated unsatisfactory by the assistant principal responsible for plaintiff's department; and a letter from the principal dated December 5, 2000 indicating that plaintiff had an unsatisfactory attendance record.

On December 14, 2000, plaintiff telephoned Mr. Cohen to request that Mr. Cohen send him several blank Step 1 Grievance Forms because he wanted to contest the documents sent by the principal; Mr. Cohen complied with this request. Plaintiff contends that he filled out three of the forms, sent them back to Mr. Cohen for filing, and received confirmation from Mr. Cohen that he received the completed forms. Mr. Cohen asserts, however, that he never received completed forms from plaintiff.

**Discontinuation of Plaintiff's Services as a Probationary Teacher**

On January 11, 2001, a representative from the Queens High Schools Superintendent's Office observed plaintiff teaching a lesson and rated the lesson unsatisfactory. According to plaintiff, later that day, plaintiff asked Mr. Cohen about the observer. Mr. Cohen indicated that he was a "hit man" from the district and that, when a teacher is considered for dismissal, the district sends a hit man to observe the teacher and to recommend dismissal.

The following day, at the principal's request, plaintiff, accompanied by Mr. Cohen, met with

5

the principal. Plaintiff was presented with the report of the prior day's observation, as well as a letter indicating that he would be reassigned from Springfield Gardens to the Queens High Schools Superintendent's Office effective January 23, 2001 and a letter indicating that his service as a probationary teacher would be discontinued effective February 16, 2001. Plaintiff sought Mr. Cohen's assistance in challenging these actions, but Mr. Cohen told him that discontinuance was outside of his jurisdiction, which is limited to school-level issues, and referred him to the Queens UFT Office for assistance.

On January 17, 2001, plaintiff met with an official from the Queens UFT Office who provided him with an appeals packet and instructions on how to challenge his discontinuance. Plaintiff filed an appeal on January 18, 2001. The Dept. of Education's Office of Appeals and Review held a hearing on plaintiff's appeal on June 6, 2001. At the hearing, plaintiff was represented by the Queens UFT Office. By letter dated July 10, 2001, plaintiff was informed that his appeal was denied.

**Charge Filed with the PERB**

On February 2, 2001, plaintiff filed an improper practice charge with the PERB, alleging that the UFT breached its duty of fair representation to plaintiff under Section 209-a.2(c) of the Taylor Law by failing to provide plaintiff adequate assistance in pursuing his various grievances with Springfield Gardens. Plaintiff alleged that the Union's actions came in retaliation for an EEOC charge that plaintiff filed against the Dept. of Education on May 8, 2000, which alleged that plaintiff's termination from Carter G. Woodson Elementary School in 1999 was motivated by discrimination on the basis of national origin. Administrative Law Judge Philip L. Maier ("ALJ

6

Maier") held a hearing on the charge over three days in late 2001 and early 2002. Pursuant to subpoenas served by plaintiff, sworn testimony was given by Mr. Cohen, plaintiff's wife, and one of plaintiff's former colleagues from Springfield Gardens. Plaintiff also testified at the hearing.

ALJ Maier issued a written decision on July 3, 2002 (the "ALJ Decision"). With respect to the October 17, 2000 grievances, ALJ Maier found that Mr. Cohen's actions were neither arbitrary, discriminatory, nor taken in bad faith. His decision states:

> It is undisputed that [Mr. Cohen] acted in accordance with his normal practice in filing the grievances to be scheduled for hearing with the principal's office, and that they were scheduled to be heard on October 23. The hearings would have proceeded in the normal course of business but for Operaji being absent on medical leave, and could not proceed in his absence. I credit Cohen's testimony that he was not asked by Operaji to reschedule the grievances for hearing . . . . In light of these findings, I find no evidence to support a conclusion that Cohen's actions breached the duty of fair representation owed to Operaji. There is no evidence that he was treated differently than any other employee, and there is ample evidence that Cohen attempted to assist him on a number of occasions with his various problems.

ALJ Decision at 15-16. With respect to the allegations that Mr. Cohen failed to file grievances concerning letters placed in plaintiff's personnel file during his sick leave, ALJ Maier found Mr. Cohen's testimony that he never received completed grievance forms from plaintiff to be credible, and found plaintiff's testimony that Mr. Cohen acknowledged receiving the forms to lack credibility. His decision states:

> I credit Cohen's testimony to the effect that he never received the completed forms from Operaji. I do not find it reasonable to conclude that Cohen mailed the forms to Operaji at his request, and then purposely refused to file them. On this topic, Cohen's testimony was consistent and, based upon my observation of his demeanor and attitude while testifying, was credible.
>
> In contrast, I do not credit Operaji's testimony that Cohen told him he received the forms. . . . I found Operaji's testimony at times to be confused, and not as credible as Cohen's testimony.

7

ALJ Decision at 17. The decision issued by ALJ Maier was affirmed, over plaintiff's exceptions, by the PERB in a decision dated December 12, 2002 ("PERB Decision"), which stated: "We find, as did the ALJ, that UFT did not act in an arbitrary, discriminatory or bad faith manner in the consideration of the merits of Operaji's grievances or the manner in which they would be processed." PERB Decision at 4-5.

**Charge Filed with the EEOC**

Plaintiff also filed a charge dated September 10, 2001 with the Equal Employment Opportunity Commission ("EEOC"), which contained the same allegations, in all material respects, as the improper practice charge filed with the PERB. The EEOC charge stated: "I believe that my Union refused to proceed with the process of my grievance because I refused to withdraw the complaint I filed with EEOC against New York City Board of Education, charge Number 160A01734." Following an investigation of the allegations contained in the September 10, 2001 charge, the EEOC issued plaintiff a right-to-sue letter dated May 29, 2002.

**The Present Action**

Plaintiff commenced this action in the United States District Court for the Southern District of New York by complaint dated July 5, 2002. With leave from that court, plaintiff amended the complaint four times. On December 13, 2002, defendants moved to dismiss the Fourth Amended Complaint. Following a report and recommendation from Magistrate Judge Andrew J. Peck, District Judge Richard M. Berman, by order dated February 27, 2003, denied defendants' motion in its entirety. The case was transferred to this court on July 22, 2003 as related to cases that were earlier

filed here.

The Fourth Amended Complaint asserts claims against the UFT and Mr. Cohen for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, as well as for various violations of New York State law. With respect to the Title VII claims, the Fourth Amended Complaint states:

> Defendants have discriminated and retaliated against Maurice Oparaji in violation of [Title VII] . . . among other ways, by:
> (a) failing to file his (Oparaji) grievance;
> (b) refusing to proceed with his (Oparaji) grievance after plaintiff filed national origin discrimination complaint;
> (c) terminating his (Operaji) grievance process;
> (d) causing employer, New York City Board of Education, to discriminate against him (Oparaji), because he (Oparaji) filed national origin discrimination with EEOC against New York City Board of Education, and refused to drop the charge;
> (e) failing to take appropriate action to remedy the effects of the retaliation against plaintiff;
> (f) refusing promptly and effectively to investigate and to take prompt and effective steps to remedy and prevent the conduct described above;
> (g) creating, maintaining, and condoning retaliation at work place;
> (h) subjecting plaintiff to a hostile work environment; and
> (i) applying harassment, threats, intimidation, and coercion on plaintiff.

## DISCUSSION

**I.      Summary Judgment Standard**

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

9

element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a), which permits the court to grant a motion for judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury" to decide an essential issue in favor of the non-moving party. Fed. R. Civ. P. 50(a)(1); *see id*. at 323.

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To prevail, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *id*. at 587. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial, and entitles the moving party to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In employment discrimination actions, courts are cautious about granting summary judgment when intent is at issue. This is because "a victim . . . [is] seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991); *accord Gallo v. Prudential Residential Services*, 22 F.3d 1219 (2d Cir. 1994). Nevertheless, "the salutary purposes of summary judgement– avoiding protracted, expensive and harassing trials– apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Thus, summary judgment "is appropriate even in discrimination cases" when the standards of Rule 56 have been met.

*Weinstock*, 224 F.3d at 41.

## II. Title VII Claims

### A. Substantive Provisions of Title VII

Title VII provides that it shall be "an unlawful employment practice" for a "labor organization" to "discriminate against any individual because of his race, color, religion, sex, or national origin" or to "cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C.§§ 2000e-2(c)(1), (3). The statute further provides that it shall be "an unlawful employment practice" for a "labor organization" to "discriminate against any member thereof . . . because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a).

Title VII claims against labor organizations are subject to an analysis different from that applicable to Title VII claims against employers. *See generally Ross v. Communication Workers of America, Local 1110*, 1995 WL 351462 (S.D.N.Y. Jun. 9, 1995), *aff'd*, 100 F.3d 944 (2d Cir. 1996). To establish a Title VII claim concerning representation by a union of its member's interests, the plaintiff must first demonstrate that the union breached its duty of fair representation to the member. *Id*. at *5. Then, the plaintiff must show some indication that the union's actions were motivated by unlawful discrimination or retaliation. *See id.* at *6.

### B. Procedural Requirements of Title VII

As a pre-requisite to filing a civil action, Title VII requires an aggrieved individual to file a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). In jurisdictions, such as this one, in which there

11

exists an agency charged with enforcing state or local prohibitions against employment discrimination, the statute provides a 300 day limitations period for filing such charge. 42 U.S.C. § 2000e-5(e)(1). If the EEOC declines to pursue legal action with respect to the charge, it will issue a "right to sue" letter to the party who filed the charge. The party then has 90 days from receipt of the letter to commence a lawsuit. 42 U.S.C. § 2000e-5(b).

### C. Claims Asserted against Mr. Cohen

Individual defendants are not subject to personal liability under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[T]he district court properly dismissed [plaintiff's] Title VII claims against the individual defendants."); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII."). Accordingly, the Title VII claims asserted against Mr. Cohen are dismissed.

### D. Claims Asserted against the UFT

Plaintiff's EEOC charge complains only of retaliation, not of discrimination on the basis of national origin or of a hostile work environment. It is not necessary for the court to decide, however, whether the claims of discrimination based on national origin and hostile work environment asserted in the Fourth Amended Complaint are reasonably related to the allegations contained in the EEOC charge, under the standard set forth in *Butts v. City of New York Dep't of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir. 1993), *abrogated by statute on other grounds as stated*

in *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 693 (2d Cir. 1998), because, for the reasons set forth below, the claims fail on the merits.

As discussed *supra*, to establish that the UFT's representation of plaintiff in the grievance process violated Title VII, plaintiff must demonstrate, in the first instance, that the Union breached its duty of fair representation to him. The contours of that duty are governed by the Taylor Law, which provides that a union breaches its duty of fair representation if its actions are "deliberately invidious, arbitrary or founded in bad faith." *Civil Service Employees Association, Inc. v. Public Employment Relations Board*, 132 A.D.2d 430, 432 (3d Dep't 1987), *aff'd*, 73 N.Y.2d 796 (1988). Conduct that is "irresponsible or grossly negligent" but lacks an improper motive does not constitute a breach of the duty of fair representation. *Id.* Likewise, an "honest mistake resulting from misunderstanding or lack of familiarity with matters of procedure does not rise to the level of the requisite arbitrary, discriminatory or bad-faith conduct." *Id.*

Following a three day hearing at which testimony was received from plaintiff, as well as three other witnesses who were subpoenaed by plaintiff, ALJ Maier made specific factual findings that, prior to plaintiff's sick leave, Mr. Cohen acted in accordance with his normal practices in handling plaintiff's grievances and "attempted to assist him on a number of occasions with his various problems;" that Mr. Cohen provided plaintiff with blank grievance forms while plaintiff was on sick leave but did not receive any completed forms back from plaintiff; that plaintiff's testimony lacked credibility; and that, overall, plaintiff presented no evidence to support a conclusion that the UFT breached its duty of fair representation to him. ALJ Maier's decision was subsequently affirmed by the PERB.

Although principles of federal common law generally require federal courts to give preclusive

effect to the factfinding of state administrative tribunals, "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *University of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986); *accord Astoria Federal Savings and Loan Assoc. v. Solimino*, 501 U.S. 104, 112-13 (1991) (holding that judicially unreviewed state administrative findings have no preclusive effect on age discrimination claims in federal court). Nevertheless, the decision of ALJ Maier, affirmed by the PERB, is entitled to substantial weight in this proceeding. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 119 (2d Cir. 2002). Where the decision of an independent tribunal "follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised." *Id*.

Plaintiff, here, fails to meet that burden. In an affidavit submitted in opposition to defendant's motion for summary judgment, plaintiff asserts, for the first time, that:

> On March 10, 2001 I received a call from Hickson [the principal of Springfield Gardens]. Hickson proceeded to say that he is calling to apologize for the Annual Evaluation rating. That he was pressured by the NYCED and UFT to get rid of me. That I will receive another Annual Evaluation in the mail. I told Hickson that there is no need for another evaluation that he should keep his evaluation that I am not interested in his another evaluation. Hickson said he knows but he is doing it on the advice of his pastor, because he has been having sleepless nights. I told Hickson that the evil that men do lives with them that sending another Evaluation would not prevent him from having sleepless nights; Hickson hanged up the phone on me. Few days later, on March 19, 2001 I received another Annual Professional Performance Review and Report on Probation Service dated March 14, 2001.

Operaji Aff. at ¶ 46. These unsubstantiated hearsay statements do not constitute competent evidence under Rule 56. Indeed, plaintiff submits no competent evidence that casts doubt on either the factual findings of ALJ Maier or the impartiality of the state administrative proceedings. The findings of

ALJ Maier were amply supported by the record before him, and nothing in the record before this court provides a basis for disturbing them.

The undisputed facts and the facts found by ALJ Maier establish that, even though the Collective Bargaining Agreement authorized plaintiff to lodge a grievance, either orally or in writing, without the assistance of the Union, Mr. Cohen filed the October 19, 2000 grievances on plaintiff's behalf and secured a hearing with the principal. The only reason that the hearing did not go forward as scheduled was that plaintiff, whose attendance was required under the terms of the Collective Bargaining Agreement, failed to appear. Furthermore, there is no evidence in the record that plaintiff asked the Union to reschedule the hearing, nor that it is the Union's general practice to do so. The facts also establish that Mr. Cohen attempted to assist plaintiff file grievances while plaintiff was on sick leave, but the process was again thwarted by plaintiff's failure to follow through, this time by failing to return the completed forms. In addition, the facts establish that the Union assisted plaintiff in appealing his discontinuance and represented him at the hearing on his appeal. Plaintiff makes no complaint concerning the adequacy of that representation. In sum, the Union made good faith efforts to assist plaintiff with his various concerns and fully discharged its duty of fair representation with respect to him.

Since plaintiff has failed to establish that any genuine issue of material fact exists concerning whether the Union breached its duty of fair representation, the court need not inquire into the Union's motives for its actions.

With respect to plaintiff's claim that the UFT caused the Dept. of Education to discriminate or retaliate against him, plaintiff submits no competent evidence to support it. Nor does he submit

competent evidence to support his claim that he was subject to a hostile work environment.[2] *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment– an environment that a reasonable person would find hostile or abusive– is beyond Title VII's purview."). Thus, plaintiff has failed to meet his burden under Rule 56. *See Celotex Corp.*, 477 U.S. at 323.

Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's Title VII claims against the UFT.

### III. State Law Claims

Having disposed of all claims over which this court has original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, those claims are dismissed without prejudice.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted with respect to plaintiff's Title VII claims. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims, which are dismissed without prejudice. The Clerk of Court is directed

---

[2] Even if plaintiff were able to establish the existence of a genuine issue of material fact with respect to his hostile work environment claim, it is not clear that the UFT could be held liable. *See E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 651 (7th Cir. 2003) (holding that Title VII does not impose an affirmative duty on unions to investigate and rectify discrimination by an employer); *Yarde v. Good Samaritan Hospital*, 360 F. Supp. 2d 552, 556 (holding that a hostile work environment claim can lie only against an employer, not against a union). *But see Howard v. International Molders and Allied Workers Union*, 779 F.2d 1546, 1553 (11th Cir. 1986) (finding unions liable for failing to use "all reasonable effort" to cause an employer to put an end to certain discriminatory practices.").

to enter judgment accordingly.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
      February 24, 2006